**United States District Court**
For the Northern District of California

1

2                                                                    *E-Filed 8/5/14*

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                           NORTHERN DISTRICT OF CALIFORNIA

10                              SAN FRANCISCO DIVISION

11

12   REABERT C. GILCHRIST,                        No. C 12-5369 RS (PR)

13              Plaintiff,                         **ORDER GRANTING DEFENDANTS'
                                                   MOTIONS FOR SUMMARY**
14        v.                                       **JUDGMENT**

15   MATTHEW CATE, et al.

16              Defendants.
                                        /

17

18                                  **INTRODUCTION**

19        Plaintiff is a state prisoner proceeding *pro se* in this civil rights action brought under

20   42 U.S.C. § 1983, in which he alleges that defendants, employees of San Quentin State

21   Prison, were deliberately indifferent to his medical needs in violation of his Eighth

22   Amendment rights.  The remaining defendants (Aiello and Zeltmann) move for summary

23   judgment.  For the reasons stated herein, defendants' motions for summary judgment are

24   GRANTED as to all claims against all defendants.

25                                   **BACKGROUND**

26        The following facts are undisputed.  On the evening of October 18, 2010 plaintiff

27   reported to work at his evening (PM) cook position in San Quentin's H-Unit kitchen.

28

**United States District Court**
For the Northern District of California

1   (Aiello's Mot. to Dismiss & Mot. for Summ. J. ("Aiello MSJ") at 7.)  Prior to the start of that

2   day's PM meal program, plaintiff came to Officer Aiello, the officer assigned to supervise

3   inmates employed in the H-Unit kitchen, requesting a job reassignment after he reported

4   experiencing pain and numbness in his thigh.  (*Id.*; Compl. at 10–11.)  Because plaintiff did

5   not present Aiello with a medical clearance from his physician excusing him from his PM

6   Cook duties, Aiello declined plaintiff's request for reassignment to a tray scullery position.

7   (Aiello MSJ at 7.)  As a result, plaintiff reported for his normal work assignment that day and

8   continued to work throughout the evening.  (*Id.*)

9        During his shift, plaintiff informed Officer Zeltmann, the correctional supervising

10  cook assigned to the H-Unit kitchen, that he was unhappy with his job assignment and was

11  contemplating calling a "Man Down"[1] after that evening's meal service.  (Zeltmann's Mot. to

12  Dismiss & Mot. for Summ. J. ("Zeltmann MSJ") at 7.)  During this conversation, Zeltmann

13  did not observe that plaintiff exhibited any injuries that would have precluded him from

14  carrying out his PM Cook duties; Zeltmann believed that plaintiff was simply unhappy with

15  his job assignment and was not in need of any medical assistance.  (*Id.* at 7–8.)  After the

16  meal service was completed, defendants observed plaintiff walk to a wall, sit down and call

17  "Man Down."  (Aiello MSJ at 7; Zeltmann MSJ at 8.)  After investigating the situation,

18  Aiello issued plaintiff a Rules Violation Report for his refusal to work without a valid excuse

19  to do so.  (*Id.*)

20       Plaintiff disputes several substantive factual assertions made by Aiello and Zeltmann.

21  Plaintiff disputes Aiello and Zeltmann's claim that they were not aware of plaintiff's medical

22  condition prior to or on the date of the incident.  (Pl.'s Opp. to Aiello MSJ at 3–4.)  He also

23  asserts that he never requested that Aiello reassign him from his PM Cook position to the

24

---

25       [1]Calling a "Man Down" is the protocol employed by inmates at San Quentin to indicate when
26  they are feeling ill or have been injured during their work shift.  (Aiello MSJ at 5.)  This practice
    normally involves an injured inmate sitting down on the floor and calling out "Man Down."  (*Id.*)  After
27  a "Man Down" has been called, a supervising correctional officer will come to the inmate's assistance
    and evaluate whether the inmate requires medical attention.  (*Id.*)  If necessary, the correctional officer
28  will make arrangements for the inmate to receive medical care.  (*Id.*)

1  tray scullery position.  (*Id.* at 5.)

2  **DISCUSSION**

3  **I.     Standard of Review**

4  Summary judgment is proper where the pleadings, discovery and affidavits

5  demonstrate that there is "no genuine dispute as to any material fact and the movant is

6  entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those

7  which may affect the outcome of the case*. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

8  248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a

9  reasonable jury to return a verdict for the nonmoving party.  *Id.*  The party moving for

10  summary judgment bears the initial burden of identifying those portions of the pleadings,

11  discovery and affidavits which demonstrate the absence of a genuine issue of material fact.

12  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the

13  burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier

14  of fact could find other than for the moving party.  On an issue for which the opposing party

15  by contrast will have the burden of proof at trial the moving party need only point out "that

16  there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

17  The court is only concerned with disputes over material facts and "factual disputes

18  that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.  It is not

19  the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v.*

20  *Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of

21  identifying, with reasonable particularity, the evidence that precludes summary judgment.

22  *Id*.  If the nonmoving party fails to make this showing, "the moving party is entitled to

23  judgment as a matter of law." *Celotex*, 477 U.S. at 323.

24  **II.    Claims**

25  **A.     Eighth Amendment**

26  Deliberate indifference to a prisoner's serious medical needs violates the Eighth

27  Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*,

28

**United States District Court**
For the Northern District of California

1   429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an

2   examination of two elements: (1) the seriousness of the prisoner's medical needs; and (2) the

3   nature of the defendant's response to those needs. *McGuckin v. Smith*, 974 F.2d 1050, 1059

4   (9th Cir. 1992) (overruled on other grounds, *WMX Technologies, Inc. v. Miller*, 104 F.3d

5   1133, 1136 (9th Cir. 1997) (en banc)).

6        A prison official is deliberately indifferent if he knows that a prisoner faces a

7   substantial risk of serious harm and disregards that risk by failing to take reasonable steps to

8   abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (equating the standard with that of

9   criminal recklessness). The prison official must not only "be aware of facts from which the

10  inference could be drawn that a substantial risk of serious harm exists," but "must also draw

11  the inference." *Id*. Consequently, in order for deliberate indifference to be established, there

12  must exist both a *purposeful* act or failure to act on the part of the defendant and harm

13  resulting therefrom. *See McGuckin*, 974 F.2d at 1060. The Supreme Court has further

14  clarified this standard by holding that "it is obduracy and wantonness, not inadvertence or

15  error in good faith, that characterize the conduct prohibited by the Eighth Amendment."

16  *Whitley v. Albers*, 475 U.S. 312, 319 (1986). A mere accident or evaluative mistake is not to

17  be characterized as wanton infliction of unnecessary pain. *Estelle*, 429 U.S. at 105.

18        **1.    Aiello**

19        Plaintiff claims that Aiello's failure to remove him from his PM Cook position

20  resulted in plaintiff becoming permanently physically disabled and constituted "deliberate

21  indifference." (Compl. at 11.) Defendant Aiello is entitled to summary judgment as a matter

22  of law. The undisputed record shows that Aiello did not have the authority unilaterally to

23  remove plaintiff from his PM Cook position or reassign him to a new work position.[2] (Aiello

24

25        [2] Even if Aiello were vested with the power to reassign inmates, plaintiff has not
26  identified, with reasonable particularity, evidence showing that Aiello's failure to reassign him
    amounted to "deliberate indifference." *See Keenan*, 91 F.3d at 1279. A week prior to the
27  incident, Aiello alleges plaintiff requested that Aiello transfer him from his PM Cook position
28  to a "Tray Scullery" position which would have required plaintiff to lift, stack and transport

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1   MSJ at 11.)  Authority to make such work position reassignments is vested in the San

2   Quentin Unit Classification Committee ("UCC"), Lieutenant Graham, and the prison medical

3   staff.  (*Id.*)  When plaintiff asked Aiello for a job reassignment, Aiello properly explained to

4   plaintiff that he did not have the authority to make such a reassignment and directed plaintiff

5   to redress his grievances with the UCC, Lt. Graham and/or the medical staff.  (*Id.*)

6        Undisputed evidence in the record shows that plaintiff was aware of these options and

7   that he deliberately chose not to explore these alternatives prior to the October 18, 2010

8   incident.  Plaintiff admits that on or about June 22, 2010 the UCC held a hearing regarding

9   his program status, including his position as a PM cook.  (Pl.'s Opp. to Aiello MSJ at 4.)  He

10  had the option of attending this meeting if he wished to voice concerns about his work

11  placement and received 72 hours written notice prior to the meeting.  (*Id.*)  Plaintiff states

12  that he did not have "any interest in attending such a meeting" because there was "no reason

13  to request reassignment to another position" at the time of the hearing.  (*Id.*)  In addition,

14  plaintiff did ultimately petition Lt. Graham for a job reassignment on December 4, 2011.

15  (*Id.*)  These facts indicate that plaintiff was aware that he should redress his claims with the

16  UCC or Lt. Graham but that he failed to do so prior to the incident.

17       Plaintiff also admits that prior to the incident he "did not submit any inmate appeals

18  requesting to be reassigned" and that "Aiello was not informed by any physicians at San

19

20  heavy food trays in violation of plaintiff's mandated work restrictions.  (Aiello MSJ at 6-7.)
    Plaintiff disputes this point and alternatively alleges that he was in fact offered the position when
21  a previous Tray Scullery was released from prison.  (Opp., Gilchrist Decl. 6.)

22       Based on the evidence in the record, it is unclear which characterization of the facts is
    true and accurate.  In either case, Aiello has asserted that he would not have assigned plaintiff
23  to the tray scullery position because the work requirements of that position would have violated
    plaintiff's mandated work restrictions set by the UCC.  (Aiello MSJ at 4, 6.)  These work
24  restrictions limited plaintiff's potential work assignments to positions involving "light duty
    [work] and food service."  (*Id*. at 4.)  Thus, if it is true that plaintiff asked Aiello to transfer him
25  to the tray scullery position, Aiello's failure to reassign plaintiff was not motivated by "obduracy
    and wantonness," as required for a finding of deliberate indifference, but rather was done to
26  comply with prison guidelines and work restrictions put in place for plaintiff's health and safety.
27  *See Whitley*, 475 U.S. 312, 319.

28

1   Quentin that Plaintiff could not perform his PM Cook duties." (*Id.* at 4–5.)  These statements

2   support the conclusion that Aiello was not deliberately indifferent to plaintiff's health and

3   safety because he was not "aware of facts from which the inference could be drawn that a

4   substantial risk of serious harm exist[ed]." *See Farmer*, 511 U.S. at 837.

5       Plaintiff alleges that on the date of the incident Aiello knew that plaintiff was injured

6   because Aiello admitted to overhearing plaintiff discussing calling a "man down" with

7   Zeltmann.  (Opp., Gilchrist Decl. at 3, 7.)  Plaintiff further alleges that when he did call "man

8   down," Officer Aiello improperly issued plaintiff an RVR and ordered plaintiff to "get up"

9   instead of dismissing plaintiff from his cook duties.  (*Id.* at 5.)  Plaintiff, however, has not

10  presented evidence that during either of these incidents he directly informed Aiello that he

11  was in physical pain or that he was injured.  Accordingly, these allegations do not provide

12  evidence that Aiello was deliberately indifferent because they do not prove that Aiello was

13  "aware of facts from which the inference could be drawn that a substantial risk of serious

14  harm exist[ed]." *See Farmer*, 511 U.S. at 837.

15      Since plaintiff has failed to show evidence that Aiello violated his Eighth Amendment

16  rights through deliberate indifference, Aiello is entitled to summary judgment as a matter of

17  law.  Accordingly, his motion for summary judgment is GRANTED.

18              **2.      Zeltmann**

19      Plaintiff claims that Zeltmann's failure to address and resolve his complaints on the

20  date of the incident resulted in plaintiff becoming permanently physically disabled and

21  constituted "deliberate indifference." (Compl. at 11.)  Zeltmann is entitled to summary

22  judgment as a matter of law.  The undisputed record shows that, similar to Aiello, Zeltmann

23  did not have the authority unilaterally to remove plaintiff from his PM Cook position or

24  assign him to a new work position.  (Zeltmann MSJ at 5–6.)

25      Even if Zeltmann were vested with the power to reassign inmates, plaintiff has not

26  identified, with reasonable particularity, evidence proving that Zeltmann's failure to reassign

27  him amounted to "deliberate indifference." *See Keenan*, 91 F.3d at 1279.  Although plaintiff

28

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  alleges that on the date of the incident Zeltmann was aware of his injury because plaintiff

2  told Zeltmann that he was contemplating calling a "man down," plaintiff has not presented

3  evidence that he directly told Zeltmann he was in physical pain on the date of the incident.

4  (Opp., Gilchrist Decl. at 7.)   Further, Zeltmann asserts — and plaintiff does not dispute —

5  that he had no knowledge of plaintiff's alleged physical injury on the date of the incident that

6  would have warranted reassignment because:  (1) plaintiff never presented him with a

7  physician's note substantiating his medical condition; and (2) he did not exhibit any signs of

8  physical injury on the date of the incident.  (Zeltmann MSJ at 7.)  These undisputed

9  assertions support the conclusion that Zeltmann was not deliberately indifferent to plaintiff's

10  health and safety because he was not "aware of facts from which the inference could be

11  drawn that a substantial risk of serious harm exist[ed]." *See Farmer*, 511 U.S. at 837.

12      Plaintiff has also not shown evidence that Zeltmann's failure to reassign him was the

13  result of "obduracy and wantonness." *See Whitley,* 475 U.S. at 319.  Zeltmann asserts that on

14  the date of the incident, he believed plaintiff was simply unhappy with his job assignment

15  and was not in need of medical assistance.  (Zeltmann MSJ at 7.)  This claim is supported by

16  the fact that plaintiff did not inform Zeltmann directly that he was in pain on the date of the

17  incident and did not display physical signs of injury.  (*Id*.)  Thus, even if Zeltmann had been

18  aware of plaintiff's physical injury prior to the incident, the evidence indicates that

19  Zeltmann's failure to act was, at most, an evaluative mistake that was not the result of

20  wanton disregard for plaintiff's health and safety. *See Whitley,* 475 U.S. at 319.

21  Accordingly, Zeltmann's actions did not amount to "deliberate indifference." *See id.*

22      Since plaintiff has failed to show evidence that Zeltmann violated his Eighth

23  Amendment rights through deliberate indifference, Zeltmann is entitled to summary

24  judgment as a matter of law.  Accordingly, the motion for summary judgment as to Officer

25  Zeltmann is GRANTED.

26

27

28

**III.    Qualified Immunity**

Defendants alternatively assert that summary judgment should be granted because they are entitled to qualified immunity against plaintiff's claims.  (Aiello MSJ at 14–16; Zeltmann MSJ at 14–16.)  Qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Under *Saucier v. Katz*, 533 U.S. 194, 194 (2001), the Court must undertake a two-step analysis to determine whether a defendant is entitled to qualified immunity in a motion for summary judgment.  First, the Court must answer the threshold question of whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show [that] the officer's conduct violated a constitutional right?" *Id.* at 201.  If the Court determines that the conduct did *not* violate a constitutional right, the inquiry is over and the officer is entitled to qualified immunity.  *Id.*  If, however, the Court determines that the conduct violated a constitutional right, it must undertake the second step of the analysis and determine "whether the right was clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 201–02.  Although the *Saucier* sequence is often appropriate and beneficial, it is not mandatory.  A court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *See Pearson v. Callahan*, 555 U.S. 223, 235–36 (2009).

As previously discussed, plaintiff has not shown evidence that defendants' conduct "violated a constitutional right" and, accordingly, defendants are entitled to qualified immunity. *Saucier*, 533 U.S. at 201.  Even assuming plaintiff had shown that defendants violated his constitutional rights, he has not shown that a reasonable officer would view defendants' actions as unlawful under the circumstances. *See id.* at 201–02.

**United States District Court**
For the Northern District of California

### A.    Aiello

A reasonable officer would view Aiello's actions as lawful because the undisputed facts show that (1) Aiello did not have the authority to reassign plaintiff; and (2) Aiello correctly followed CDCR guidelines by directing plaintiff to obtain clearance for a job reassignment from the San Quentin UCC, Lt. Graham and/or medical staff.  (Aiello MSJ at 4, 6, 11.)  Under these circumstances, Aiello acted as a reasonable officer and, accordingly, is entitled to qualified immunity.  *See Saucier,* 533 U.S. at 202.

### B.    Zeltmann

The undisputed record shows that a reasonable officer would view Zeltmann's actions as lawful because (1) Zeltmann did not have the authority to reassign plaintiff; (2) Zeltmann had no prior knowledge of plaintiff's alleged medical condition; and (3) plaintiff did not display signs of physical injury that required urgent medical care on the date of the incident. (Zeltmann MSJ at 5–7.)  Under these circumstances, Zeltmann acted as a reasonable officer and, accordingly, is entitled to qualified immunity.  *See Saucier,* 533 U.S. at 202.

### CONCLUSION

Plaintiff has failed to show that there are genuine disputes as to any material fact as to any of his claims.  As a result, defendants' motions for summary judgment (Docket Nos. 28 and 54) are GRANTED as to all claims against defendants R. Aiello and Brian Zeltmann. Defendants' motion to strike the opposition (Docket No. 57) is DENIED.  The Clerk shall enter judgment in favor of all defendants as to all claims, terminate Docket Nos. 28, 54, 57 and close the file.

**IT IS SO ORDERED**.

DATED:  August 5, 2014

RICHARD SEEBORG
United States District Judge